IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| TERRY BLAIR, | : | BANKRUPTCY NO.: 5-15-bk-04195-JJT |
| DEBTOR | : | |
| PHI AIR MEDICAL, L.L.C., | : | {**Nature of Proceeding**: Complaint for Nondischargeability of a Debt (Doc. #1)} |
| PLAINTIFF | : | |
| vs. | : | |
| TERRY BLAIR, | : | |
| DEFENDANT | : | **ADVERSARY NO.: 5-16-ap-00010-JJT** |

# OPINION

A Complaint has been filed by the Plaintiff, PHI Air Medical, L.L.C., against the Debtor, Terry Blair, seeking a ruling holding the Debtor's obligation to PHI in the amount of $10,383.86 is nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6). Trial on this matter occurred March 21, 2017, after which I took the adversary under advisement.

A creditor bears the burden of proving, by a preponderance of the evidence, the debtor's obligation falls within one of the exceptions to discharge enumerated in § 523(a). *Grogan v. Garner*, 498 U.S. 279, 286–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). These exceptions are construed strictly against the objecting creditor. *In re Fegeley*, 118 F.3d 979, 983 (3rd Cir. 1997).

The facts are not unusual and will be described generally. Prior to the Debtor's bankruptcy, the Debtor was in need of emergency helicopter transport to a medical facility which required the preflight execution of an "assignment of insurance benefits." Air transport was provided by PHI, which billed $27,376. This was the amount submitted to the Debtor's health

[K:\Cathy\Opinions-Orders filed 2017\5-16-ap-00010-JJT_Blair_Dischargeability.pdf]

Case 5:16-ap-00010-JJT    Doc 35    Filed 06/16/17    Entered 06/16/17 12:36:32    Desc
Main Document    Page 1 of 8

insurance carrier by PHI. The carrier approved payment of $10,383.86 and, rather than honoring the assignment, sent a check to the Debtor. The Debtor deposited the check in his own account, never paid PHI, and used the fund for other purposes besides paying PHI. Thereafter, the Debtor filed Chapter 13 bankruptcy.

PHI argues the fact the Debtor executed an assignment of insurance benefits prior to the medical flight. PHI claims the executed assignment prevented the Debtor from using the proceeds for any purpose other than paying PHI. PHI's primary position is the Debtor, by treating the insurance check as his own property, ran afoul of § 523(a)(4) which renders nondischargeable debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C.A. § 523 (West).

PHI places a great deal of reliance on the existence of a binding assignment which would effectively remove Debtor's claim against his carrier from property of the estate.[1] The assignment would mean the Debtor in this case would have no right to demand the insurance carrier pay him the $10,383.86 reimbursement check. Notwithstanding the legal assignment, however, the insurance carrier did, in fact, pay the Debtor this check which then obligated the Debtor to pay those proceeds over to PHI under a separate provision of the "Assignment of

---

[1] Property interests are determined under state law inasmuch as those interests should not be affected by the "happenstance of bankruptcy." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (U.S. 1979). Pennsylvania law recognizes two forms of "assignments," legal and equitable. *In re Purman's Estate*, 358 Pa. 187, 190, 56 A.2d 86, 88 (1948). Legal assignments exist where the assignor has a present intent at the time of assignment to divest himself of his right. *Melnick v. Pennsylvania Co. for Banking and Trusts*, 180 Pa.Super. 441, 443–44, 119 A.2d 825, 826 (1956). An "equitable assignment" depends on the equitable powers of the court for enforcement.

An equitable assignment has been best described in the Restatement of Contracts:

> In some circumstances a contract to assign or a contract to transfer proceeds may create a right in the promisee very similar to that of an assignee. Even though there is no present assignment, the promisee may have a right to specific performance of the promise. If it can be enforced against third parties, such a right resembles that of an assignee, and it is sometimes referred to as an "equitable assignment" or "equitable lien."

Restatement (Second) of Contracts § 330 (1981) *comment c*.

Benefits." See Assignment at Doc. #24, page 25. ("In the event any such proceeds are paid directly to me, I agree to pay them promptly to Provider [PHI].") It also changes the character of this analysis. Since the legal assignment was not honored by the insurance carrier (assuming it knew about it), the legal assignment became ineffective, and PHI must now rely on a provision in the Assignment of Benefits requiring the Debtor to turn over the fund. This is a provision which fits within the Restatement definition of an equitable assignment or a contract to transfer proceeds to be received in the future. I find that this check became the property of the Debtor subject to an equitable assignment. In *In re Napoleon*, the bankruptcy court concluded funds delivered to an assignor were imposed with a constructive trust for the benefit of the assignee. *In re Napoleon*, 551 B.R. 200, 205 (Bankr. E.D.N.C. 2016). *In accord*, *In re Justin*, 2014 WL 3373863 (Bankr. E.D.Mich. 2014); *In re Helms*, 467 B.R. 374 (Bankr. W.D.N.C. 2012). This is a position rooted in the legislative history of § 541.

> Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.

S. Rep. No. 989, 95th Cong. 2d Sess. 82 (1978).

The use of the term "property of the debtor" in legislative history is unfortunate since it may be somewhat misleading. There is no question that all legal and equitable interests of the debtor in property are generally included in debtor's estate. 11 U.S.C. § 541(a)(1). Section 541(d), however, excludes from that property those items in which the debtor's interest is only legal and not equitable. Undoubtedly, this would include the *res* of an express trust in which the debtor was a trustee. In this Circuit, a constructive trust would also be removed from the

debtor's estate and entitle the provider with a right of turnover. *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3rd Cir. 1993)[2]. A constructive trust, however, is a legal construct which is only implemented where both the legal and equitable ownership of a fund is in the hands of the owner. It is an equitable remedy utilized by the courts and designed to create a fair result in the absence of an express or resulting trust.[3] A constructive trust simply does not exist until a court says it does.

> "A constructive trust has been defined to be a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition of the retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property ... a constructive trust is imposed not to effectuate intention but to redress wrong or unjust enrichment. A constructive trust is remedial in character."

*City of Philadelphia v. Heinel Motors*, 142 Pa.Super. 493, 16 A.2d 761, 765–66 (1940) *citing* Restatement of the Law of Trusts, Vol. 1, p. 5, Chap. 1, section 1(e).

If PHI was seeking the imposition of a constructive trust and a turnover of what remains of this fund held by the Debtor, I would likely grant such request; but PHI is not asking for a turn over of funds, rather, an exception from discharge of the Debtor's obligation to repay this sum.

It is generally held a "[c]onstructive or implied trust or trust ex maleficio is not sufficient to create [a] fiduciary relationship within [the] meaning of 11 U.S.C.A. § 523(a)(4)." Constructive or Implied Trusts; Trusts ex Maleficio, 2F Bankr. Service L. Ed. § 27:782. *In accord*, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1185 (9th Cir. 1996); *In re Thompson*, 458 B.R. 504

---

[2] But see a contrary position voiced in *In re Omegas Grp., Inc.*, 16 F.3d 1443, 1452 (6th Cir. 1994) ("Constructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors . . . .")

[3] A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of. Restatement of the Law of Trusts 2d § 404.

(8th Cir. BAP 2011), *aff'd*, 686 F.3d 940 (8th Cir. 2012); *In re Fahey*, 482 B.R. 678 (1st Cir. BAP 2012). Because the fund in question was not created as a result of an express or residual trust, I conclude the Debtor was not acting in a fiduciary capacity.

11 U.S.C. § 523(a)(4), though, not only covers fraud or defalcation while acting in a fiduciary capacity, but this subsection would also be applicable to acts of embezzlement or larceny.

> Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. . . .
>
> Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. As distinguished from embezzlement, the original taking of the property must be unlawful.

4 Collier on Bankruptcy ¶ 523.10[1][e][2] at 523-76, 77 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017).

The facts before me do not appear to allow the possibility of larceny inasmuch as Debtor's possession of the proceeds were anticipated by the terms of the "Assignment of Benefits" which appear to contemplate the health insurance company might send the insurance check directly to the insured.[4] "[L]arceny requires taking and carrying away of another's property . . . ." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1760, 185 L. Ed. 2d 922 (2013). Despite the dishonored assignment, the check from the health insurance carrier was *never* the actual property of PHI. There was no larceny.

---

[4] PHI's Complaint specifically alleged, in Count I, that the Debtor committed "larceny." Thereafter, in a pretrial brief, (Doc. # 26), PHI suggested embezzlement under the same subsection might be more *ap propo*. "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue." Federal Rule of Civil Procedure Rule 15(b)(2), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7015. In the absence of objections, I must conclude this issue was tried by consent.

It appears clear, for PHI to prevail, it must establish the Debtor embezzled these funds. This is where the Supreme Court's discussion in *Bullock* is instructive. It is not every breach of contract which will fit within the § 523(a)(4) criteria. Fraudulent conduct, or its equivalent, is a necessary element of finding cause has been established under § 523(a)(4). *Bullock v. BankChampaign, N.A.*, 133 S. Ct. at 1759.

The Debtor most certainly breached his agreement to transfer the fund to PHI, but did such conduct cost him his ability to discharge this debt? Embezzlement requires a "felonious intent" which "must have existed at the time of the taking." *Moore v. United States*, 160 U.S. 268, 270, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895). Here, the Debtor did not implement a deception so as to arrange transfer to him of funds meant for PHI. He resisted this air transport and only consented because his treating physician offered no alternative. In violation of the assignment, the insurance carrier sent the check to the Debtor, which check became the property of the Debtor.

Once the Debtor received this insurance check, he offered the same to PHI with the proviso he would be released from any balances owing. He even retained counsel to assist him in the negotiation. Unquestionably, the Debtor held that fund in a constructive trust for the benefit of PHI. *In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3rd Cir. 1993). But, one cannot embezzle one's own property. *In re Phillips*, 882 F.2d 302 (8th Cir. 1989). If the insurance carrier was aware of the assignment, then it obviously ignored it and sent the check for $10,383.86 directly to the Debtor. At that point, the fund belonged to the Debtor who was contractually responsible for paying it over to PHI together with the balance of expense for the medical flight. Just as one cannot steal money from oneself, one cannot embezzle money from a constructive trust. Although I have no problem finding an obligation to pay PHI, I simply do not see a felonious intent to deprive another of its property inasmuch as the check received by the

Debtor vested a full interest in the fund in the Debtor, not PHI, especially when construing § 523(a)(4) strictly against the objecting creditor as I must.

I am hard-pressed to find the type of felonious intent required by the Court in *Bullock*. There is no clearer illustration of the dynamics implicated here than comparing the facts present in *Bullock* with those in the present case. *Bullock* also involved an allegation that dischargeability should be denied under § 523(a)(4) because the trustee of a trust for the benefit of his siblings, violated the trust by borrowing money from the trust for the benefit of his mother. While the Supreme Court acknowledged such activity was a breach of fiduciary duty, the Court explained the trustee was not possessed of the fraudulent intent which Congress was attempting to address in § 523(a)(4). The Court held § 523(a)(4) was inapplicable. As was stated in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934), a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. Under these facts, I simply cannot find the fraudulent intent needed to deny the dischargeability of this debt. *In accord, In re Tucker,* 346 B.R. 844, 853 (Bankr. E.D.Okla. 2006). This Court finds PHI has not met its burden of proof, and the debt is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(4).

PHI also advances the discharge of this obligation should be denied under the provisions of § 523(a)(6), which excepts from discharge those debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." There is authority for this position found in a number of Chapter 7 cases. *In re Gandara*, 218 B.R. 808, 813 (Bankr. E.D.Va. 1997); *Richmond Metro. Hosp. v. Hazelwood (In re Hazelwood)*, 43 B.R. 208, 214 (Bankr. E.D.Va. 1984); *In re Lavitsky*, 11 B.R. 570 (Bankr. W.D.Pa. 1981). The cited cases predated the seminal case in this area, *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). *Kawaauhau* emphasized the act in question must not only cause injury, but the debtor must

intend for that injury to occur. This holding, the Court said, was consistent with an earlier ruling of the court. *Kawaauhau v. Geiger*, 118 S.Ct. at 978 *citing McIntyre v. Kavanaugh*, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916). Nevertheless, the broader Chapter 13 discharge provides that debts arising under § 523(a)(6) are eligible for discharge. 11 U.S.C. § 1328(a)(2). For this reason , I must rule in favor of the Debtor on that Count.

    My Order will follow.

By the Court,

Date: June 16, 2017

John J. Thomas, Bankruptcy Judge
(CMS)